IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA18-1312

Filed: 3 March 2020

Durham County, No. 16 CVS 001574

REBECCA HOLDSTOCK and LOUIS HOLDSTOCK, Plaintiffs,

v.

DUKE UNIVERSITY HEALTH SYSTEM, INC., d/b/a DUKE UNIVERSITY MEDICAL CENTER, DUKE UNIVERSITY HOSPITAL and/or DUKE HEALTH, Defendants.

Appeal by Plaintiffs from order entered 25 July 2018 by Judge Orlando Hudson in Superior Court, Durham County. Heard in the Court of Appeals 6 August 2019.

*Bailey & Glasser, LLP, by Benjamin J. Hogan, pro hac vice, and George B. Currin, for Plaintiffs-Appellants.*

*Yates, McLamb & Wyher, L.L.P., by Dan J. McLamb and Lori Abel Meyerhoffer, and Robinson Bradshaw, by Mark W. Merritt and Brian L. Church, for Defendants-Appellees.*

McGEE, Chief Judge.

Rebecca Holdstock ("Ms. Holdstock") and Louis Holdstock (collectively, "Plaintiffs") appeal from an order striking the affidavit of Plaintiffs' designated expert and granting summary judgment in favor of Duke University Health System, Inc., d/b/a Duke University Medical Center, Duke University Hospital and/or Duke Health ("Defendant Duke").

**I. Factual and Procedural History**

Ms. Holdstock contacted Duke Health in early 2013 complaining of dizziness and "syncopal episodes." Dr. Scott A. Strine, a neurologist, ordered an MRI of Ms. Holdstock's brain, which was performed on 1 March 2013 (the "2013 MRI"). Dr. Hasan A. Hobbs, a radiologist and neuroradiology fellow, and Dr. Jenny K. Hoang, a neuroradiologist, interpreted the 2013 MRI as an "unremarkable brain MR." At a follow-up appointment on 21 March 2013, Dr. Strine reviewed the results of the 2013 MRI and found the images of Ms. Holdstock's brain "completely unremarkable."

Ms. Holdstock returned to Duke Health on 21 September 2015 complaining of "headaches, vision changes, nausea, photophobia, worsening tinnitus and questionable hearing loss." Audiological testing confirmed Ms. Holdstock was suffering from decreased hearing in her left ear, and a second MRI was ordered. At the follow-up appointment on 23 September 2015, Dr. David Kaylie, an otolaryngologist, diagnosed Ms. Holdstock with an acoustic neuroma in her left ear. Ms. Holdstock testified in her deposition that when Dr. Kaylie reviewed the 2013 MRI, he stated "[t]his is awkward. They missed something two-and-a half years ago on your MRI. You have an acoustic neuroma. This explains everything that you've been through."

Subsequently, physicians at the Mayo Clinic removed the acoustic neuroma in Ms. Holdstock's left ear. Post-operative audiological testing revealed Ms. Holdstock "had suffered a complete hearing loss in her left ear."

Plaintiffs' counsel e-mailed Dr. Marc L. Bennett ("Dr. Bennett") on 14 November 2016 and requested he "review the records and advise us if you believe there was any negligence in failing to diagnose the acoustic neuroma in the first instance and, secondly, what harm was occasioned by the delay in diagnosis[.]" Plaintiffs' counsel sent Plaintiffs an e-mail on 7 December 2016, stating "I spoke with the ENT reviewer Dr. Marc Bennett from Vanderbilt. Without getting into great detail, he says the neuroma is very clear on the original MRI and should never have been missed."

Plaintiffs filed a complaint on 16 December 2016 against Dr. Strine, Dr. Hobbs, Dr. Hoang ("Defendant Doctors") and Defendant Duke (collectively, "Defendants"), alleging professional negligence of Defendant Doctors, negligence of Defendant Duke, and imputed negligence of Defendant Doctors to Defendant Duke. Plaintiffs filed an amended complaint on 19 December 2016, which included the certification language required by Rule 9(j) for medical malpractice actions:

> Plaintiff asserts that the medical care, treatment and all medical records pertaining to the alleged negligence that are available to plaintiff after a reasonable inquiry have been reviewed by a person who is reasonably expected to qualify as an expert witness under Rule 702 of the Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care.

In addition to Plaintiffs' allegations of negligence, Plaintiffs also alleged that "the pre-filing requirements of Rule 9(j) of the NC Rules of Civil Procedure [are] unconstitutional."

Defendants filed an answer on 21 March 2017, asserting Defendants' actions complied with the standard of care and denying any negligence. Plaintiffs filed answers to Defendants' Rule 9(j) interrogatories on 4 June 2018. Plaintiffs identified Dr. Bennett as the "person[] who . . . [Plaintiffs] reasonably expect to qualify as an expert witness . . . and who is willing to testify that the medical care of Scott Strine, D.O., Hasan Hobbs, M.D. and Jenny Hoang, M.D. did not comply with the applicable standard of care."

Dr. Bennett was deposed on 3 January 2018. Defendants' counsel asked Dr. Bennett, "you were never willing to testify that Dr. Strine, Dr. Hoang, or Dr. Hobbs violated the standard of care; is that correct?" Dr. Bennett answered, "[c]orrect." Dr. Bennett was asked, "you were never willing – you have never been willing to testify that the medical care of Scott Strine, Hasan Hobbs, or Jenny Hoang did not comply with the applicable standard of care; is that correct?" Dr. Bennett responded, "[y]es, that's correct." Plaintiffs' counsel intervened and stated on the record:

> I don't understand these questions. We didn't designate him as a standard of care expert. He's not in the same specialty as . . . these doctors. We wouldn't have asked him to render a standard of care . . . You asked him if he was a specialist in these specialties. He said no. You've asked him before whether he's offered standard of care opinions

or would he be willing to, and he said no because they are different specialists. . . . I can represent [Dr. Bennett] wasn't asked to look at the standard of care for Dr. Strine, Dr. Hoang, or Dr. Hobbs. I wouldn't ask him to do it because he's in a different specialty and he never expressed standard of care opinions to me. [] I'm not going to ask him about standard of care at the time of trial.

Defendant Duke filed a motion to dismiss Plaintiffs' complaint pursuant to Rule 12(b)(6) or, in the alternative, a motion for summary judgment pursuant to Rule 56 on 1 June 2018. Defendant Duke alleged that Plaintiffs failed to comply with the requirements of Rule 9(j) because Dr. Bennett "was not reasonably expected to qualify as an expert witness under Rule 702 of the Rules of Evidence," did not form the opinion that "any health care provider breached the applicable standard of care," and was unwilling "to testify that the medical care did not comply with the applicable standard of care under Rule 9(j)."

Plaintiffs filed an affidavit from their counsel and an affidavit from Dr. Bennett "to clarify" Dr. Bennett's deposition testimony on 15 June 2018. In his affidavit, Dr. Bennett explained:

> I advised counsel for Ms. Holdstock that I was willing to testify the MRI images taken in 2013 clearly show an acoustic neuroma that should not have been missed and that the ultimate delay in diagnosis of the acoustic neuroma led to a loss of chance for her to preserve hearing because of the growth of the tumor caused by the delay in diagnosis.

Plaintiffs' counsel explained in his affidavit:

> That based on Dr. Bennett's education, training and experience, coupled with his review of the medical records and MRI images, I believed that I had met the requirements of Rule 9(j) in getting a qualified expert to review the matter and who held the opinion that a deviation from the standard of care occurred prior to filing the lawsuit and in response to the Defendant's Rule 9(j) interrogatories.

Plaintiffs filed a response to Defendant Duke's motion to dismiss or, in the alternative, motion for summary judgment on 2 July 2018. Defendant Duke filed a motion to strike Dr. Bennett's affidavit on 5 July 2018 stating it was "in direct conflict with Dr. Bennett's prior deposition testimony." Following a hearing on 10 July 2018, the trial court orally ruled "[P]laintiff's [sic] have failed to comply with Rule 9(j); the motion to strike Dr. Bennett's affidavit is allowed. The motion for summary judgment is allowed for the reasons argued by the defense."

The trial court then entered an order striking Dr. Bennett's affidavit and granting summary judgment pursuant to Rule 9(j) and Rule 56 on 25 July 2018, concluding that Rule 9(j) was constitutional, Dr. Bennett's affidavit was a "sham affidavit" that should be stricken, Plaintiffs failed to comply with the requirements of Rule 9(j), and "[t]he facially valid Rule 9(j) certification of the Plaintiffs' amended complaint [was] not supported by the facts." Plaintiffs appeal.

## II. Analysis

Plaintiffs make two substantive arguments on appeal. First, Plaintiffs contend the trial court erred by striking Dr. Bennett's affidavit and granting Defendant

Duke's motion for summary judgment because the record demonstrates that Plaintiffs satisfied the requirements of Rule 9(j) at the time the complaint was filed. Second, Plaintiffs argue Rule 9(j) violates the open courts guarantee preserved in the North Carolina Constitution and the equal protection clauses of the North Carolina and United States Constitutions. We do not consider the merits of Plaintiffs' arguments because, assuming *arguendo* Plaintiffs properly "raised" a constitutional facial challenge to Rule 9(j), N.C.G.S. § 1-267.1(a1) (2017) and N.C.G.S. § 1-81.1 (2017) required that Plaintiffs' facial challenge be heard and decided by a three-judge panel in the Superior Court of Wake County. Because this did not occur, Plaintiffs' purported facial challenge has yet to be resolved and the 25 July 2018 order from which Plaintiffs purport to appeal is interlocutory. We therefore vacate and remand.

A.

In order to reach our ultimate holding, we must conduct an analysis of N.C.G.S. § 1-267.1 and N.C.G.S. § 1-81.1—which require certain challenges to the acts of the General Assembly to be decided by a three-judge panel in Superior Court, Wake County, in order to determine if and how these statutes apply in this case. N.C.G.S. § 1-267.1 and N.C.G.S. § 1-81.1 only apply to "facial challenge[s] to the validity of an act of the General Assembly[,]" not as-applied challenges, N.C.G.S. § 1-267.1(a1), and only apply to civil proceedings, N.C.G.S. § 1-267.1(d). "A facial challenge is an attack on a statute itself as opposed to a particular application." *City of Los Angeles v. Patel*,

___ U.S. ___, ___, 192 L. Ed. 2d 435, 443 (2015); *see also State v. Thompson*, 349 N.C. 483, 491, 508 S.E.2d 277, 282 (1998). Presuming it was properly "raised" in the complaint, Plaintiffs' stated constitutional challenge presents a "facial" challenge to Rule 9(j), not an "as-applied" challenge, when Plaintiffs allege: "Rule 9(j) is an unconstitutional violation of the Seventh and Fourteenth Amendments of the United States Constitution and Article I, Sections 6, 18, 19, 25 and 32, and Article IV, Sections 1 and 13 of the North Carolina Constitution."

The General Assembly amended both N.C.G.S. § 1-267.1 and N.C.G.S. § 1-81.1 in 2014 to require civil proceedings that challenge the facial validity of an act of the General Assembly to be heard and decided by a three-judge panel in the Superior Court of Wake County. 2014 N.C. Sess. Law 100, §§ 18B.16.(a) and (b). N.C.G.S. § 1-267.1(a1) states in relevant part:

> *[A]ny facial challenge* to the validity of an act of the General Assembly *shall be transferred* pursuant to G.S. 1A-1, Rule 42(b)(4), to the Superior Court of Wake County and *shall be heard and determined* by a three-judge panel of the Superior Court of Wake County, organized as provided by subsection (b2) of this section.

N.C.G.S. § 1-267.1(a1) (emphasis added). The language of N.C.G.S. § 1-267.1(a1) appears to require that "any facial challenge" to an act "shall be transferred" "and shall be heard and determined by a three-judge panel." *Id.* Although this language initially appears to mandate the transfer of *every* kind of facial challenge in a civil proceeding to the "validity of an act of the General Assembly[,]" N.C.G.S. § 1-267.1(a1)

also states that transfer to a three-judge panel must be conducted *pursuant to* Rule

42(b)(4) (or "the Rule"), which limits the application of the statute in multiple ways.

N.C.G.S. § 1-267.1(a1).

Further, Rule 42(b)(4) is written in such a manner that not all its requirements

are clear on a first reading. It states in relevant part:

> Pursuant to G.S. 1-267.1, any facial challenge to the validity of an act of the General Assembly . . . shall be heard by a three-judge panel in the Superior Court of Wake County if a claimant raises such a challenge in the claimant's complaint or amended complaint in any court in this State, or if such a challenge is raised by the defendant in the defendant's answer, responsive pleading, or within 30 days of filing the defendant's answer or responsive pleading. In that event, the court shall, on its own motion, transfer that portion of the action challenging the validity of the act of the General Assembly to the Superior Court of Wake County for resolution by a three-judge panel if, after all other matters in the action have been resolved, a determination as to the facial validity of an act of the General Assembly must be made in order to completely resolve any matters in the case. The court in which the action originated shall maintain jurisdiction over all matters other than the challenge to the act's facial validity. For a motion filed under Rule 11 or Rule 12(b)(1) through (7), the original court shall rule on the motion, however, it may decline to rule on a motion that is based solely upon Rule 12(b)(6). If the original court declines to rule on a Rule 12(b)(6) motion, the motion shall be decided by the three-judge panel. The original court shall stay all matters that are contingent upon the outcome of the challenge to the act's facial validity pending a ruling on that challenge and until all appeal rights are exhausted. Once the three-judge panel has ruled and all appeal rights have been exhausted, the matter shall be transferred or remanded to the three-judge panel or the trial court in which the action originated

for resolution of any outstanding matters, as appropriate.

N.C.G.S. § 1A-1, Rule 42(b)(4) (2017).

Because Rule 42(b)(4) includes multiple conditions, which are not presented in procedurally chronological order, we will consider the mandates of the Rule in an order that more clearly represents its dictates. The Rule first tracks the language of N.C.G.S. § 1-267.1(a1): "*[A]ny* facial challenge to the validity of an act of the General Assembly . . . *shall* be heard by a three-judge panel[.]" N.C.G.S. § 1A-1, Rule 42(b)(4) (emphasis added). However, the Rule then limits the application of N.C.G.S. § 1-267.1(a1) to only those facial challenges that were first "raised" in a complaint or an amended complaint; or "raised" by the "defendant's answer, responsive pleading, or within 30 days of filing the defendant's answer or responsive pleading." *Id.*[1] To simplify, we will refer to any facial challenge "raised" in a plaintiff's complaint or amended complaint, or in a defendant's answer, responsive pleading, or by another appropriate means within thirty days of the filing of the defendant's answer or responsive pleading as "a properly raised challenge" or "properly raised challenges."

Rule 42(b)(4) further requires: "[T]he court shall, *on its own motion*, transfer that portion of the action challenging the validity of the act of the General Assembly to the Superior Court of Wake County for resolution by a three-judge panel[.]" *Id.*

---

[1] The word "raised" is not defined, and it is therefore uncertain whether "raising" a facial challenge in a complaint is synonymous with "pleading" a facial challenge, and subject to the pleading requirements set forth in Rule 8. *See* N.C.G.S. § 1A-1, Rule 8 (2017).

(emphasis added). In other words, it is the trial court's role to recognize that a facial challenge has been made and, if appropriate, transfer the matter, *sua sponte*, at a time in accordance with the dictates of the Rule. We will discuss the timing requirements in detail below. Because we are not considering the merits of Plaintiffs' appeal, we make no determination concerning whether Plaintiffs properly "raised" their facial challenge to Rule 9(j) in their complaint; thus, upon remand, that will be for the trial court to decide. Because the trial court's decision on this matter will determine what courses of action are open to Plaintiffs, and we cannot presume what will happen upon remand, we believe a broader consideration of the relevant statutes is warranted.

Although the Rule requires that facial challenges raised in a complaint *must* be transferred, *sua sponte*, for a ruling by a three-judge panel, the language of the Rule does not expressly *prohibit* the trial court from deciding a facial challenge if it is *not* filed in accordance with the limitations included in Rule 42(b)(4). For example, Rule 42(b)(4), and therefore N.C.G.S. § 1-267.1(a1), does not *expressly* prohibit a facial challenge that is *first* raised in a motion for summary judgment filed *more* than thirty days after the filing of the defendant's answer or responsive pleading.[2] Further, the Rule mandates that the trial court transfer a facial challenge to a three-judge panel

---

[2] *See also*, N.C.G.S. § 1A-1, Rule 12(h)(2) ("A defense of failure to state a claim upon which relief can be granted . . . may be made in any pleading permitted or ordered under Rule 7(a), or by motion for judgment on the pleadings, or at the trial on the merits.").

in certain circumstances, but does not *expressly prohibit* the trial court, in its discretion, from transferring a facial challenge that does not comply with the requirements of Rule 42(b)(4). *See Webster Enters., Inc. v. Selective Ins. Co.,* 125 N.C. App. 36, 46, 479 S.E.2d 243, 249–50 (1997) ("The trial court is vested with broad discretionary authority in determining whether to bifurcate a trial. This Court will not superimpose its judgment on the trial court absent a showing the trial court abused its discretion by entering an order manifestly unsupported by reason.") (citations omitted). Unfortunately, neither N.C.G.S. § 1-267.1(a1) nor Rule 42(b)(4) provide guidance on how facial challenges in civil proceedings should be resolved when they are "raised" outside the Rule 42(b)(4) requirements.

Subsection (c) of N.C.G.S. § 1-267.1 serves to answer some of the questions concerning the authority of the trial court to rule on facial challenges, but also raises other questions. It states:

> No order or judgment [in a civil proceeding] shall be entered . . . [that] finds . . . an act of the General Assembly is facially invalid on the basis that the act violates the North Carolina Constitution or federal law, except by a three-judge panel of the Superior Court of Wake County organized as provided by . . . subsection (b2) of this section.

N.C.G.S. § 1-267.1(c). Pursuant to a plain reading of N.C.G.S. § 1-267.1(c), *no court,* other than a three-judge panel granted jurisdiction pursuant to N.C.G.S. § 1-267.1, is permitted to make an initial ruling, and enter a judgment or order thereon, that

an act of the General Assembly violates the North Carolina Constitution or any federal law. N.C.G.S. § 1-267.1(c).[3]

In addition, venue for facial challenges of the acts of the General Assembly is addressed in N.C.G.S. § 1-81.1(a1), which states:

> Venue lies exclusively with the Wake County Superior Court with regard to any claim seeking an order or judgment of a court, either final or interlocutory, to restrain the enforcement, operation, or execution of an act of the General Assembly, in whole or in part, based upon an allegation that the act of the General Assembly is facially invalid on the basis that the act violates the North Carolina Constitution or federal law. Pursuant to G.S. 1-267.1(a1) and G.S. 1-1A, Rule 42(b)(4), claims described in this subsection that are filed or raised in courts other than Wake County Superior Court or that are filed in Wake County Superior Court shall be transferred to a three-judge panel of the Wake County Superior Court if, after all other questions of law in the action have been resolved, a determination as to the facial validity of an act of the General Assembly must be made in order to completely resolve any issues in the case.

N.C.G.S. § 1-81.1(a1). This statute, like N.C.G.S. § 1-267.1(a1), contains facially conflicting mandates. It states that "[v]enue lies exclusively with the Wake County Superior Court with regard to any claim" requesting that an act of the General Assembly not be enforced because it "is facially invalid on the basis that the act violates the North Carolina Constitution or federal law." N.C.G.S. § 1-81.1(a1). A reading of the plain language of this sentence would prevent any court other than the

---

[3] We do not address whether this statute is meant to apply to our appellate courts.

Superior Court of Wake County from considering any constitutional facial challenge to an act. However, the second sentence of the statute restricts the transfer *requirement* to only properly raised challenges as set forth in Rule 42(b)(4). Also, like N.C.G.S. § 1-267.1(a1), N.C.G.S. § 1-81.1(a1) does not expressly address how trial courts should resolve facial challenges that are not "properly raised" pursuant to Rule 42(b)(4).

Considered *in pari materia*, a plain reading of N.C.G.S. § 1-81.1(a1), N.C.G.S. §§ 1-267.1(a1) and (c), and Rule 42(b)(4), prohibits entry of *any* order or judgment in a civil proceeding that rules an act of the General Assembly facially unconstitutional, *unless*: (1) it was made by a three-judge panel granted jurisdiction pursuant to N.C.G.S. § 1-267.1; *and* (2) the underlying facial challenge to the act was "a properly raised challenge" as required by Rule 42(b)(4). A facial challenge made in a motion *later* than thirty days from the filing of the defendant's answer or responsive pleading, as determined by the Rule, is *not required* to be transferred to a three-judge panel by N.C.G.S. § 1-267.1 or N.C.G.S. § 1-81.1(a1), and there is nothing in these statutes expressly prohibiting the trial court from considering a facial challenge, *but* if the trial court were to determine that an act was facially unconstitutional or contrary to federal law, N.C.G.S. § 1-267.1(c) prohibits the trial court from entering any order or judgment to that effect. The plain language of both N.C.G.S. § 1-267.1 and N.C.G.S. § 1-81.1(a1) does not prohibit a trial court from considering a facial

challenge to an act, making a ruling, and entering a judgment or order thereon *so long as*: (1) the trial court's ruling in its judgment or order determines that the challenged act is *not* facially unconstitutional; and (2) the facial challenge was *not* filed in accordance with Rule 42(b)(4).  N.C.G.S. § 1-267.1(c).

B.

The plain language of these three statutes, read *in pari materia*, raises issues concerning procedure, the rights of the parties to make facial challenges both during the period set by Rule 42(b)(4) and those facial challenges that arise later in the action, and the authority of the trial court to act in its discretion when a facial challenge is not expressly covered by Rule 42(b)(4).  We review Plaintiffs' alleged facial challenge considering the relevant requirements of N.C.G.S. § 1-267.1 and N.C.G.S. § 1-81.1(a1).

We first note it is well settled that "the courts of this State will avoid constitutional questions, even if properly presented, where a case may be resolved on other grounds."  *Anderson v. Assimos*, 356 N.C. 415, 416, 572 S.E.2d 101, 102 (2002) (citations omitted).  Therefore, because Plaintiffs argue that the trial court erred in granting summary judgment on *both* constitutional and non-constitutional grounds, this Court would normally consider Plaintiffs' non-constitutional argument first.  However, N.C.G.S. § 1-267.1(a1), including Rule 42(b)(4), governs our jurisdiction in this matter, and we must determine if Plaintiffs' claim is governed by the Rule.  If so,

we must then determine whether Plaintiffs and the trial court have handled Plaintiffs' claims in accordance with N.C.G.S. § 1-267.1(a1), which requires the transfer of a facial challenge to a three-judge panel be accomplished pursuant to the dictates of Rule 42(b)(4). Rule 42(b)(4) states that transfer of a facial challenge is only required if Plaintiffs "raise[d] such a challenge in [Plaintiffs'] complaint or amended complaint[.]" N.C.G.S. § 1A-1, Rule 42(b)(4).

Plaintiffs' complaint states in relevant part:

> Plaintiff[s] object[] to the pre-filing requirements of Rule 9(j) of the NC Rules of Civil Procedure as unconstitutional. Rule 9(j) effectively requires Plaintiff[s] to prove their case before factual discovery is undertaken, denies malpractice plaintiffs their rights of due process of law, or equal protection under the law, of the right to open courts, and of the right to a jury trial, in violation of the United States and North Carolina Constitutions. Rule 9(j) is an unconstitutional violation of the Seventh and Fourteenth Amendments of the United States Constitution and Article I, Sections 6, 18, 19, 25 and 32, and Article IV, Sections 1 and 13 of the North Carolina Constitution.

Therefore, it was the trial court's first duty to determine whether Plaintiffs' complaint "raised" a facial challenge to an act of the General Assembly in accordance with the Rule. The trial court's determination of this issue then would dictate the actions thereafter required. When a facial challenge is properly "raised" pursuant to Rule 42(b)(4), N.C.G.S. § 1-267.1 determines the jurisdiction over the action, or parts of the action, of the trial court, the three-judge panel, and the appellate courts. Under the requirements of the Rule, if Plaintiffs properly "raised" a facial challenge in their

complaint, the facial challenge could only be heard and decided by a three-judge panel:

> Pursuant to G.S. 1-267.1, any facial challenge to the validity of an act of the General Assembly . . . shall be heard by a three-judge panel in the Superior Court of Wake County if a claimant raises such a challenge in the claimant's complaint or amended complaint in any court in this State[.]

N.C.G.S. § 1A-1, Rule 42(b)(4).

The trial court in this case had no jurisdiction to decide any facial challenge that was first "raised" in Plaintiffs' complaint. Instead, if the trial court determined Plaintiffs had properly "raised" a facial challenge to Rule 9(j) in their complaint, the trial court was required to determine "if, after all other matters in the action have been resolved, a determination as to the facial validity of [Rule 9(j)] must be made in order to completely resolve any matters in the case." *Id.* "All other matters" under Rule 42(b)(4) means "all matters that are [not] contingent upon the outcome of the challenge to the act's facial validity[.]" *Id.* Therefore, in this case, the trial court should have determined if there were any matters that were not "contingent upon the outcome of [Plaintiffs'] challenge to [Rule 9(j)'s] facial validity[.]" *Id.* If the trial court determined there *were* matters not "contingent upon the outcome of [Plaintiffs'] challenge to [Rule 9(j)'s] facial validity[,]" *id.*, the trial court was required to resolve those matters *prior* to considering whether Rule 42(b)(4) mandated transfer of Plaintiffs' facial challenge to the three-judge panel. *Id.* However, if the trial court

determined that there were no such matters, Rule 42(b)(4) mandates that "the court *shall*, on its *own motion*, transfer that portion of the action challenging the validity of the act of the General Assembly to the Superior Court of Wake County for resolution by a three-judge panel[.]" *Id.* (emphasis added).

In the present case, if the trial court had determined there were matters not "contingent upon the outcome of [Plaintiffs'] challenge to [Rule 9(j)'s] facial validity[,]" *id.*, and had decided such matters, it then would have had to decide whether "a determination as to the facial validity of [Rule 9(j)] [had to] be made in order to completely resolve any [remaining] matters in the case." *Id.* For example, if the trial court had found reason to grant summary judgment in favor of either Plaintiffs or Defendants, based upon matters not contingent on Plaintiffs' facial challenge, the trial court would not have transferred Plaintiff's facial challenge to a three-judge panel because the underlying action would have already been decided in full. However, if the trial court had decided all matters not "contingent upon the outcome of" resolution of Plaintiffs' facial challenge, but matters contingent on resolution of the facial challenge remained "in order to completely resolve" the action, the trial court would have been required, "on its own motion, [to] transfer that portion of the action challenging the validity of [Rule 9(j)] . . . for resolution by a three-judge panel[.]" *Id.*

Pursuant to Rule 42(b)(4), when a trial court transfers a facial challenge to a three-judge panel, it "maintain[s] jurisdiction over all matters other than the challenge to the act's facial validity." *Id.* However, once the transfer occurs:

> *The original court shall stay all matters that are contingent upon the outcome of the challenge to the act's facial validity pending a ruling on that challenge and until all appeal rights are exhausted.* Once the three-judge panel has ruled and all appeal rights have been exhausted, the matter shall be transferred or remanded to the three-judge panel or the trial court in which the action originated for resolution of any outstanding matters, as appropriate.

*Id.* (emphasis added). Thus, upon transfer, a trial court *must* stay any outstanding matters that cannot be fully resolved without resolution of the facial challenge by the three-judge panel. Only after final resolution of the facial challenge will that portion of the action be remanded or transferred back to the original trial court for final resolution of any remaining issues and entry of a final judgment. *Id.*

In the present case, the trial court granted summary judgment in favor of Defendant Duke. Even though findings of fact and conclusions of law are not required in an order granting summary judgment, and are not binding on this Court, *McArdle Corp. v. Patterson*, 115 N.C. App. 528, 531, 445 S.E.2d 604, 606 (1994), the trial court included the following findings and conclusions in its order granting summary judgment: "The [trial court] considered [P]laintiffs['] arguments that Rule 9(j) was unconstitutional; the [trial court] found no appellate authority in North Carolina to support that contention and the [trial court] concludes that Rule 9(j) is

- 19 -

constitutional." Initially we note that the trial court's order is not in conflict with the express language of N.C.G.S. § 1-267.1(c)—*because it ruled in favor of the constitutionality of Rule 9(j)*. Based on a plain language reading of N.C.G.S. § 1-267.1(c), the statute would have prohibited entry of the order if the trial court had agreed with Plaintiffs and ruled that Rule 9(j) was facially *unconstitutional*.

However, because Plaintiffs included, *in their complaint*, a facial challenge to Rule 9(j), the trial court was required to proceed according to the provisions of N.C.G.S. § 1-267.1(a1) and Rule 42(b)(4). The trial court should have first determined whether Plaintiffs had properly "raise[d] . . . a [facial] challenge in [their] complaint or amended complaint in any court in this State[.]" N.C.G.S. § 1A-1, Rule 42(b)(4). Assuming, *arguendo*, that Plaintiffs' complaint properly "raised" a facial challenge, the trial court was required to proceed pursuant to Rule 42(b)(4). There is no evidence that the trial court complied with the requirements of Rule 42(b)(4), which it must do *sua sponte*, if not raised by the parties. *Id.* If Plaintiffs' facial challenge was "raised" in their complaint, Rule 42(b)(4) mandated: "Pursuant to G.S. 1-267.1, [Plaintiffs'] facial challenge to the validity of [Rule 9(j)] . . . *shall* be heard by a three-judge panel[.]" *Id.* (emphasis added).[4] The trial court was required to transfer any properly "raised" facial challenge for decision by a three-judge panel "after all other matters

---

[4] There is no exception in Rule 42(b)(4) that would allow Plaintiffs' facial challenge, if properly "raised" in their complaint, to be decided by the trial court on summary judgment.

in the action ha[d] been resolved[,]" *i.e.*, "all matters that [were not] contingent upon the outcome of the challenge to [Rule 9(j)'s] facial validity[.]" *Id.*

Further, the only other issue decided by the trial court in its 25 July 2018 order granting summary judgment was that Plaintiffs had failed to meet the pleading requirements of Rule 9(j), in large part based on the trial court's granting of Defendant Duke's motion to strike Dr. Bennett's affidavit. Although we are not deciding these matters on their merits, the trial court's ruling that Plaintiffs had failed to comply with Rule 9(j) would be rendered moot, effectively overruled, if the three-judge panel subsequently ruled that Rule 9(j) was unconstitutional on its face.

The statutes do not provide guidance for determining what matters constitute "matters that are contingent upon the outcome of the challenge to the act's facial validity[,]" but the trial court is in a far superior position than this Court to make the initial determination, based on the pleadings, filings, evidence, and legal arguments made directly to the trial court. Unlike the trial court, this Court cannot ask questions that might help resolve issues or prompt responses necessary to create a complete record. For this reason and others, we believe the trial court should generally make the determinations required by N.C.G.S. § 1-267.1(a1) and Rule 42(b)(4) in the first instance. On the facts before us, we hold that the trial court is required to make these determinations, including whether to transfer Plaintiffs' facial challenge, in the first instance.

Because the trial court did not act in accordance with N.C.G.S. § 1-267.1(a1), Plaintiffs' facial challenge, if it was properly "raised," has not been "heard by a three-judge panel" and decided. *Id.* The trial court was without jurisdiction to enter an order ruling on the facial constitutionality of Rule 9(j), and also without authority to enter an order ruling against Plaintiffs on the merits of the non-constitutional issue, because the ultimate decision of that issue was contingent on the three-judge panel's resolution of the facial challenge. Therefore, Plaintiffs' appeal is also interlocutory, and there is no right of interlocutory appeal provided by N.C.G.S. § 1-267.1(a1).

Though there are unanswered questions raised by the manner in which the relevant statutes are worded, in order to decide this appeal we hold it is the duty of the trial court to first determine whether Plaintiffs "raised" a facial challenge to Rule 9(j) in their complaint, thus invoking the provisions of N.C.G.S. § 1-267.1(a1) and Rule 42(b)(4). If Plaintiffs did properly "raise" a facial challenge in this case, the trial court is without jurisdiction to rule on the facial constitutionality of Rule 9(j) because sole jurisdiction to decide that matter resides with "the Superior Court of Wake County[,]" and the matter is required to "be heard and determined by a three-judge panel of the Superior Court of Wake County, organized as provided by subsection (b2)" of N.C.G.S. § 1-267.1. N.C.G.S. § 1-267.1(a1). The trial court also has to determine what issues, if any, are *not* "contingent upon the outcome of the challenge to the act's facial validity[,]" and resolve those issues before deciding whether it is

necessary to transfer the facial challenge to the three-judge panel. If the trial court decides, after all issues not contingent on the outcome of Plaintiffs' facial challenge are resolved, that resolution of Plaintiffs' facial challenge to Rule 9(j) is still required to permit resolution of remaining issues, it shall, "on its own motion, transfer that portion of the action challenging the validity of [Rule 9(j)] to the Superior Court of Wake County for resolution by a three-judge panel[,]" and "stay all matters that are contingent upon the outcome of the challenge to [Rule 9(j)'s] facial validity pending a ruling on that challenge and until all appeal rights are exhausted." N.C.G.S. § 1A-1, Rule 42(b)(4).

## III. Conclusion

Because the trial court did not comply with the mandatory requirements of N.C.G.S. § 1-267.1, it was without jurisdiction to enter its 25 July 2018 order. Thus, we vacate and remand this matter to the trial court to comply with the statutory mandates of N.C.G.S. § 1-267.1(a1) and N.C.G.S. § 1A-1, Rule 42(b)(4).

VACATED AND REMANDED.

Judge BERGER concurs in result only.

Judge COLLINS concurs.